ROGERS, Circuit Judge,
concurring. I join the majority opinion in full.
The most difficult aspect of this case is the trial court’s striking of veniremember Crystal Jones, who from the record at *1117 least appears to have been a perfectly good person to have on the jury. However, applying AEDPA deference, the state court was not unreasonable in rejecting the Batson challenge with respect to Ms. Jones. Each -of the prosecutor’s reasons can be seen as providing support for the same valid nonracial prosecutorial concern — that Ms. Jones was steeling herself from being rushed to judgment. A prosecutor could validly wish to strike a juror with such an attitude. The sense that Ms. Jones felt inconvenienced, and that she felt “herded around,” directly support such a prosecutorial concern. So does Ms. Jones’ answer to questionnaire question 47. The question was, “Do you believe an African American can receive a fair trial in our Criminal Justice System?” Ms. Jones answered, “Yes.” Following up on her just-expressed thought, however, she' explained, “again if there isn’t a system at all then, the general public would take matters in their own hands, i.e., ‘The Ox-Bow Incident.’ ” The Ox-Bow Incident is a well-known novel that involves a Western vigilante hanging of three innocent men. Independently bringing up the novel could reinforce a prosecutorial perception that Ms. Jones had her mind on the possibility of a rush to judgment. The district court, for its part, relied on the mistaken assumption of the prosecutor — that the victim(s) in the novel were African-American — to conclude that the prosecutor’s reliance on Ms. Jones’ reference was racial. But that mistake as to the novel’s story does not logically support a conclusion that the prosecutor was striking Ms. Jones on the basis of race.
DISSENT